**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

MALCO TOOLS, INC.,

Plaintiff,

v.

U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,

Defendants.

Case No. 1:26-cv-05076

**COMPLAINT**

1. Malco Tools, Inc., a Minnesota corporation, ("Plaintiff") is a U.S.-based importer of goods into the United States of America, subject to the challenged duties.

2. Beginning in February of 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as an authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on imported goods.

3. Plaintiff is the importer of record of merchandise subject to the IEEPA duties and paid the IEEPA duties on its imported goods.

4. This Court, the Federal Circuit, and the United States Supreme Court have held that IEEPA does not authorize these tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *aff'd sub nom. Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

5. Although the Supreme Court held that the IEEPA duties and underlying executive orders are unlawful, this separate action is necessary. Importers, including Plaintiff, that have paid

IEEPA duties, are not guaranteed a refund unless they have obtained their own judgment from this Court to the extent that they do not otherwise qualify for the Consolidated Administration and Processing of Entries ("CAPE"). *See In re Tariffs Collected in Reliance on IEEPA*, No. 26-00219, Order at 2–4 (Ct. Int'l Trade July 17, 2026).

6. Accordingly, now that the IEEPA tariffs have been held to be illegal and are no longer in effect, Plaintiff brings this action to ensure that it can obtain a judgment ordering the refund of duties that Plaintiff paid.

7. To that end, Plaintiff seeks: (i) a declaration that the IEEPA duties are unlawful; and (ii) a full refund, with interest as required by law, from Defendants of all IEEPA duties that Plaintiff has already paid to the United States as a result of the executive orders challenged in this lawsuit, regardless of whether or not those entries have been liquidated.

**PARTIES**

8. Plaintiff Malco Tools, Inc. ("Malco Tools"), is a U.S. company, incorporated in Minnesota, with its principal place of business located at 14080 State Highway 55 NW Annandale, Minnesota 55302.

9. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12. Defendants are referred to collectively in this Complaint as "CBP."

**JURISDICTION**

13. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections*, 149 F.4th at 1329; *Learning Res.*, 607 U.S. at 240 n.1.

14. This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a monetary judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by CBP. As a result of the executive orders challenged by this and previous lawsuits, Plaintiff has paid IEEPA duties to the United States and thus has suffered injury caused by those orders. Declaratory and injunctive relief from this Court would redress those injuries.

16. Plaintiff also faces imminent and irreparable harm because entries for which it paid IEEPA duties began to liquidate on June 26, 2025.

17. Actions brought in this Court under 28 U.S.C. § 1581(i) must be commenced "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). President Trump issued the executive orders that resulted in the collection of IEEPA duties on February 1, 2025.

18. This action was timely commenced within two years of the executive orders implementing the tariffs at issue.

## GENERAL PLEADINGS

### I. President Trump orders a series of tariffs, invoking IEEPA for his authority.

19. On February 1, 2025, President Trump issued several executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq.*, authorizing the tariffs. For each set of tariffs, President Trump claimed that they were justified under IEEPA because of a purported national emergency.[1]

20. On April 2, 2025, citing trade deficits with our trading partners as its own national emergency, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[2] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I. These country-specific tariffs ranged from 11% to 50%. *Id.* This was followed by additional executive orders targeting China, which also raised the "reciprocal" tariff rate.[3]

---

[1] *See, e.g.*, Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025); Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[2] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[3] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025);

## II. CBP's implementation of the unlawful tariffs.

### A. Assessment and collection

21. CBP is charged with the assessment and collection of duties, which included the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

22. In 1988, Congress adopted the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS. 19 U.S.C. § 1202.

23. In implementing the Executive-Order-based tariff regime, the Defendants directed changes to HTSUS, requiring that goods subject to the challenged tariffs be entered under new tariff codes. *See Harmonized Tariff Schedule of the United States*, U.S. Int'l Trade Comm'n, Chapter 99.

### B. Liquidation

24. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R § 159.1.

25. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

26. This Court possesses the equitable authority to suspend liquidation. *E.g.*, *In re Section 301 Cases,* 524 F. Supp. 3d 1355, 1371–72 (Ct. Int'l Trade 2021).

27. Once liquidation has occurred, an importer of record may, under certain circumstances, file a protest contesting the liquidation, asking the CBP to "reliquidate" the duties.

---

Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).

*See* 19 U.S.C. § 1514. A liquidation is final if a protest is not filed with CBP within 180 days after the date of liquidation. *See id.*

**III. The IEEPA tariffs are deemed unlawful.**

28. On April 14, 2025, several companies filed an action in this Court challenging the legality of the above tariff orders (the "IEEPA Tariff Orders"). *See V.O.S. Selections, et al., v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

29. On August 29, 2025, sitting *en banc*, the Federal Circuit affirmed this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections*, 149 F.4th at 1318.

30. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sep. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with oral argument held on November 5, 2025.

31. The United States Supreme Court held that the IEEPA Tariff Orders were unlawful. *Learning Res., Inc. v. Trump*, 607 U.S. 229, 255 (2026). According to the Court, the U.S. Constitution did not authorize the President to impose the IEEPA tariffs because the power to impose tariffs is a branch of the taxing power and is therefore reserved for Congress. *Id.* at 242. And IEEPA did not authorize the President to impose the IEEPA tariffs because such an

authorization would require clear language from Congress, and the text of IEEPA did not support a reading that IEEPA delegated the power to impose tariffs to the President. *Id.* at 243–50.

**IV. This Court and CBP establish procedures for IEEPA tariff relief.**

32. On March 5, 2026, following the Supreme Court's *Learning Resources* decision, this Court entered an order establishing that "with respect to any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the executive orders considered by the Supreme Court in [*Learning Resources*], U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties." *Atmus Filtration, Inc. v. United States*, Court No. 26-02159, Amended Order at 2 (Ct. Int'l Trade Mar. 5, 2026).[4] This Court maintained that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Id.* at 1.

33. Following the entry of that order, CBP constructed the Consolidated Administration and Processing of Entries ("CAPE") system, which processes refunds for certain categories of entries that were paid based on the IEEPA Tariff Orders. *In re Tariffs Collected in Reliance on IEEPA*, No. 26-00219, Order at *1–2 (Ct. Int'l Trade July 17, 2026).

34. To date, the CAPE system does not and has not accepted for processing any finally liquidated entries, nor any entries that have been liquidated for more than 80 days. *Id.* at *1 n. 2.

35. Accordingly, on July 17, 2026, this Court issued an order that "U.S. Customs and Border Protection shall reliquidate, without regard to IEEPA duties, any and all of Plaintiffs'

---

[4] This Court reissued the *Atmus Filtration* order in *Euro-Notions Florida, Inc. v. United States*, Court No. 26-01259, ECF No. 53 (Ct. Int'l Trade Apr. 7, 2026). This Court has also issued similar orders in *V.O.S. Selections, Inc. v. United States*, Court No. 25-0066, ECF No. 82 (Ct. Int'l Trade Apr. 17, 2026); *Grant & Bowman, Inc. v. United States*, Court No. 25-00689, ECF No. 14 (Ct. Int'l Trade Apr. 17, 2026); and *AGS Automotive Solutions v. United States*, Consol. Court No. 25-00255, ECF. No. 43 (Ct. Int'l Trade Apr. 17, 2026).

entries that have been liquidated for more than 80 days and on which Plaintiffs made estimated deposits pursuant to IEEPA," subject to "submission to U.S. Customs and Border Protection of Plaintiffs' importer of record identification number(s)." *Id.* at *2.

36. Prior to the issuance of that order, Defendants assured this Court that they would acquiesce to the CBP being ordered to reliquidate entries even if the statutory period for protest had expired. *See AGS Co. Automotive Solutions v. U.S. Customs and Border Protection*, Consol. Ct. No. 25-0255, Slip Op. 25-154, at 8 (Ct. Int'l Trade, Dec. 15, 2025).

**V. Plaintiff's payment of the IEEPA duties.**

37. By this Complaint, Plaintiff challenges those orders (the "IEEPA Tariff Orders") that affect the duty rates on goods imported from the countries with which Plaintiff does business and for which Plaintiff paid duties (thus causing Plaintiff injury), and which the Supreme Court of the United States has already held to be unlawful.

38. Defendants relied solely on the IEEPA statute to impose and collect the IEEPA duties. *See Learning Res.*, 607 U.S. at 238–40.

39. As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed by the IEEPA Tariff Orders on a continuous basis until President Trump issued Executive Order 14389, following the Supreme Court decision, which terminated the tariffs. *See* Exec. Order No. 14389, *Ending Certain Tariff Actions*, (Feb. 20, 2026) Fed. Reg. 9437 (Feb. 25, 2026).

40. Plaintiff's imports subject to IEEPA entered the United States under new HTSUS codes from foreign countries.

41. The entries for which Plaintiff has paid IEEPA duties imposed by the IEEPA Tariff Orders have, as a general matter, begun to liquidate on or after June 26, 2025.

42. But because CAPE does not accept for processing any finally liquidated entries, nor any entries that have been liquidated for more than 80 days, not all of Plaintiff's entries are eligible for CAPE review.

43. On October 14, 2026, Plaintiff filed a protest for entries that had been liquidated for 80–180 days. This protest was suspended on October 15, 2026.

## STATEMENT OF CLAIMS

### COUNT I
### THE IEEPA TARIFF ORDERS ARE UNLAWFUL CONSISTENT WITH *LEARNING RESOURCES*

44. Plaintiff incorporates all preceding paragraphs by reference.

45. The executive orders challenged in this Complaint are materially identical in structure, authority claimed, and effect, to those struck down in *V.O.S. Selections* and *Learning Resources*. They purport to impose duties and to modify the HTSUS solely under IEEPA.

46. As this Court, the Federal Circuit, and the Supreme Court have all explained, IEEPA does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates. The IEEPA Tariff Orders are unlawful as applied to Plaintiff.

47. "When an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (citation omitted).

48. Plaintiff respectfully requests that this Court apply the binding decisions of the Federal Circuit and Supreme Court and declare the IEEPA Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order a refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

**COUNT II**
**DECLARATORY RELIEF, 28 U.S.C. §§ 2201, 1581**

49. Plaintiff incorporates all preceding paragraphs by reference.

50. In a civil action under 28 U.S.C. § 1581, the Court of International Trade can enter a monetary judgment against the United States and can order any other appropriate civil relief, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

51. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties as a result of the unlawful IEEPA Tariff Orders on goods it has imported into the United States.

52. This Court has maintained that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Atmus Filtration, Inc. v. United States*, Court No. 26-02159, Amended Order at 1 (Ct. Int'l Trade Mar. 5, 2026).

53. CBP has taken the "unequivocal position" that "liquidation will not affect the availability of refunds after a final decision" in *V.O.S. Selections*. *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol. Court No. 25-00255, Slip Op. 25-154, at 8 (Ct. Int'l Trade Dec. 15, 2025).

54. Following the Supreme Court's decision in *Learning Resources*, this Court ordered that CBP "shall reliquidate, without regard to IEEPA duties, any and all of [an importer's] entries that have been liquidated for more than 80 days and on which [the importer] made estimated deposits pursuant to IEEPA." *In re Tariffs Collected in Reliance on IEEPA*, No. 26-00219, Order at *2 (Ct. Int'l Trade July 17, 2026).

55. 19 U.S.C. § 1520(a)(1) authorizes the refund of duties whenever it is ascertained upon liquidation or reliquidation that more money has been deposited or paid as duties than was required by law.

56. Based on the above, Plaintiff requests a declaratory judgment that the IEEPA Tariff Orders are unlawful, that CBP lacks authority to implement and collect the resulting tariffs as to Plaintiff, and that any liquidations that occurred pursuant to the IEEPA Tariff Orders should be reliquidated by CBP, with a resulting refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a) declare that the IEEPA Tariff Orders are *ultra vires* with respect to Plaintiff;

b) declare that, with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the IEEPA Tariff Orders;

c) order the United States to refund to Plaintiff the IEEPA duties collected on those entries, with interest as provided by law;

d) consistent with *In re Tariffs Collected in Reliance on IEEPA*, No. 26-00219 (Ct. Int'l Trade July 17, 2026) (Order), order CBP to reliquidate any transactions that are liquidated by CBP before or after this Complaint is filed, and refund to Plaintiff the IEEPA duties collected on those entries, with interest provided by law;

e) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

f) grant such further relief as this Court deems proper.

Respectfully submitted,
Date: November 6, 2026

By s/ *Kathleen Fisher Enyeart*
Kathleen Fisher Enyeart
**LATHROP GPM LLP**
2323 Grand Blvd., Suite 800
Kansas City, MO 64108
T: 816-292-2000
F: 816-292-2001
kathleen.fisherenyeart@lathropgpm.com

Brooke F. Robbins
**LATHROP GPM LLP**
3100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
T: 612-632-3000
F: 612-632-4492
brooke.robbins@lathropgpm.com

**ATTORNEYS FOR PLAINTIFF**